UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00676-TBR

LONGWOOD, LLC,                                                                    PLAINTIFF

v.

DAVID VOEGELE, *et. al.*,                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants David Voegele, Scott Harris, Alan Bond, the Oldham County Engineer's Office, and the Oldham County Fiscal Court's motion for partial judgment on the pleadings, [DN 13.] Plaintiff Longwood, LLC ("Longwood" or "Plaintiff") responded, [DN 14], and Defendants replied, [DN 15.] Fully briefed, this matter is ripe for adjudication. For the reasons discussed below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

This action arises out of Plaintiff Longwood's development of a residential community called Harmony Pointe in Oldham County, Kentucky. [DN 1 at 3–4.] Longwood began developing Harmony Pointe after "[t]he Oldham County Planning and Zoning Commission approved the development plan . . . on December 16, 2013." [*Id.* at 4.] After July 13, 2016, Longwood's only business has been "to sell remaining lots not yet sold. Critically, Longwood does not engage in the construction of homes on the lots that it has sold. From time to time Longwood provides financing to contractors." [*Id.*]

On September 18, 2017, the Oldham County Engineer's Office sent Longwood a Notice of Deficiency (the "First NOD"). [*Id.* at 5.] The deficiencies identified on the First Notice

pertained to lots 11, 12, 13, 15, 16, 18, 21, 22, 26, 29, 38, and 40. [DN 1-2 at 1–2 (Notice of Deficiency).] Defendant Alan Bond was identified on the First Notice as the "Inspector." [*Id.*] Longwood contends that it owned only lots 7, 9, and 15 at the time the First Notice was issued, and that it "remedied all alleged deficiencies with those lots." [*Id.* at 5.]

Bond issued a second Notice of Deficiency (the "Second NOD") on October 4, 2017. [*Id.* at 5.] According to Longwood, the Second Notice, like the First Notice, "detailed alleged "deficiencies' with specific lots which are owned and controlled by third party contractors, under no control of Longwood." [*Id.* at 6.] A third Notice of Deficiency (the "Third NOD") was issued on October 17, 2017, which Longwood contends also "alleged deficiencies with lots owned by third party contractors, including Lots 29, 18, 15, 12, and 40," over which Longwood has no control. [*Id.*]

"On October 30, 2017, members of the Oldham County Engineer's Office met with Longwood's Engineer, Charlie E. Weiter, P.E. ("Weiter"), to discuss the NODS on behalf of Longwood." [*Id.*] Notes from that "Inspection Site Visit" stated that "Longwood should 'clean up all waste concrete throughout the project site.'" [*Id.* (quoting DN 1-5 at 1).] However, according to Longwood, "[t]he only 'concrete' present on the development is on specific individual lots owned by third party contractors." [*Id.*]

On November 7, 2017, Weiter sent an email to Defendant Scott Harris informing him that Longwood has no ownership interest in the individual lots in Harmony Pointe that were being developed by builders and that each owner needed to be "responsible for their site disturbance activity". [*Id.* at 7.] Later that same day, "at approximately 4:30 pm, Weiter attended a meeting with Scott Harris and [Defendant] Voegele." [*Id.* at 8.] There, "Weiter explained how Longwood is not the 'Person Responsible' under the Ordinance as the lots are owned by third party

2

contractors." [*Id.*] Longwood contends that, at the meeting, "Harris and Voegele did not have a valid explanation for attempting to enforce the Ordinance against Longwood." [*Id.*] However, that same day, the Oldham County Fiscal Court issued a "NOTICE OF VIOLATION" and an "ORDER TO STOP WORK IMMEDIATELY" ("Stop Work Order") with regard to all work on the Harmony Pointe development. [*Id.*]

Longwood asserts that the Stop Work Order has required it "to stop selling any lots, including to close the property under contract," and has "forced third party contractors to stop construction on the lots they own." [*Id.*] On this basis, Longwood brought the instant suit against Oldham County Judge Executive David Voegele, Scott Harris, Alan Bond, the Oldham County Engineer's Office, and the Oldham County Fiscal Court. [*See* DN 1 at 3.] Longwood contends that Defendants have wrongfully attempted to enforce an Oldham County pollution Ordinance against it "when it is not a Landowner or Permittee as defined in the Ordinance." [*Id.* at 9.] Longwood asserts claims for violation of the Fourteenth Amendment under 42 U.S.C. § 1983, violation of the Contracts Clauses of the U.S. and Kentucky Constitutions, and tortious interference with contract. [*Id.* at 10–13.] Defendants simultaneously filed an answer, [DN 12], and the instant motion for partial judgment on the pleadings, [DN 13.]

STANDARD

"For purposes of a motion for judgment on the pleadings [under Rule 12(c)], all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). However, the Court "need not accept as true legal conclusions or unwarranted factual

inferences." *Id.* at 581–82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.' " *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

DISCUSSION

In its motion for partial judgment on the pleadings, Defendants contend that "[t]he proper party to Plaintiff's Complaint is Oldham County. Defendants, David Voegele, Scott Harris, Alan Bond, and the Oldham County Engineer's Office are not proper parties and Plaintiff's claims against them should be dismissed with prejudice." [DN 13-1 at 2 (Memorandum in Support of Defendants' Motion).] The Court will address each of Defendants' arguments in turn.

**A. Claims Against David Voegele, Scott Harris, and Alan Bond**

Defendants first argue that any claims brought against Voegele, Harris, and Bond in their official capacities as Oldham County employees "are simply another way of stating a cause of action against the Oldham County Fiscal Court," which is duplicative since Plaintiffs also assert a claim against the Oldham County Fiscal Court. [*Id.* at 3.] Indeed, there is an abundance of case law confirming the principle that official capacity claims against employees of an entity, when that entity itself is also named as a defendant, are duplicative. *See Colson v. City of Alcoa, Tennessee*, No. 3:16-CV-377, 2017 WL 4019596, at *5 (E.D. Tenn. Sept. 11, 2017) ("In allowing the municipal liability claims against the City of Alcoa to remain intact, however, the Court will dismiss the official-capacity claims against Chief Potter, Lieutenant Fletcher, Officer Cook, and Officer Wilson because they are duplicative."); *Thorpe ex rel. D.T. v. Breathitt Cty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) ("[W]hen a § 1983 complaint asserts a

4

claim against a municipal entity and a municipal official in his or her official capacity, federal courts will dismiss the official-capacity claim.").

In its response, Plaintiff concedes that the official capacity claims against Voegele, Harris, and Bond are properly dismissed. Accordingly, to the extent Plaintiff does sue those Defendants in their official capacities, those claims will be dismissed. However, Plaintiff contends that it also brings its claims against those Defendants in their individual capacities, and that those claims are proper and not subject to dismissal. [DN 14 at 1 (Plaintiff's Response).] Plaintiff is correct that, even when official capacity claims are dismissed as duplicative of claims against the entity itself, individual capacity claims against the same defendants can proceed. *See Thorpe*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) ("Because Thorpe has also asserted a claim against the Board of Education, these official-capacity claims are duplicative . . . Therefore, the Court will dismiss the official-capacity claims. Thorpe may still pursue the § 1983 claim against the Board of Education and the claims against Defendants in their individual capacities."); *Fultz v. Whittaker*, 187 F. Supp. 2d 695, 708 (W.D. Ky. 2001) ("Plaintiffs' actions against the individual defendants in their official capacities do duplicate the action against the Fiscal Court and for the sake of accuracy Defendants John Black and Gene Hicks should be dismissed *to the extent they are sued only in their official capacity*.") (emphasis added).

In their reply, however, Defendants contend that Plaintiff never provided notice that it brings its claims against Voegele, Harris, and Bond both in their official *and* individual capacities. [DN 15 at 2–3.] In support of this argument, Defendants cite *Moore v. City of Harriman*, in which the Sixth Circuit states that, "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' . . . failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient

notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). Defendants contend that, unlike in *Moore*, the "course of proceedings" test has not been satisfied here. [DN 15 at 2–3.] In support of this argument, Defendants focus on how Plaintiff characterized its claims against Voegele, Harris, and Bond in its complaint. [*Id.*] But Defendants ignore a crucial part of *Moore*. Importantly, after analyzing whether the complaint provided notice that the plaintiff asserted individual capacity claims against certain defendants, the *Moore* court went on to state that

> [e]ven assuming the complaint itself failed to provide sufficient notice, Moore's response to the officers' motion to dismiss clarified any remaining ambiguity: "The individuals named are police officers who are being sued in their individual capacities for using excessive and unreasonable force while making an arrest of the Plaintiff on April 7, 1996."

*Moore*, 272 F.3d at 774. In other words, "[s]ubsequent filings in a case may rectify deficiencies in the initial pleadings." *Id. See also Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) ("In his complaint, Rahman did not state in what capacity he sued McGinnis. However, in his reply to McGinnis's motion for summary judgment, Rahman makes it clear that he intended to sue McGinnis in his individual and official capacities . . . Rahman's response to McGinnis's motion for summary judgment is sufficient notice to McGinnis that he is being sued in his individual capacity.").

This is precisely what happened here. Even though Plaintiff did not caption its claims against Voegele, Harris, and Bond in its complaint as individual or official capacity claims, it has undoubtedly clarified, in its response to Defendants' partial motion for judgment on the pleadings, that it asserts claims against those Defendants in their individual capacities. [DN 14 at 4.] Specifically, in its response, Plaintiff states that "Voegele, Harris, and Bond are proper parties in their individual capacities for actions taken under color of state law that deprived Longwood

of its constitutional rights without due process." [*Id.*] This is more than adequate to "clarify[y] any remaining ambiguity," *Moore*, 272 F.3d at 774, with regard to Plaintiff's claims.

Defendants next argue, however, that "[w]hile Plaintiff has arguably clarified its intent to seek individual liability against these Defendants, the content of its complaint cannot support such a cause of action" because the complaint specifically alleges that "Defendants' actions were taken under their authority as county officials and are predicated on the Ordinance, and thus occurred under the color of state law." [DN 15 at 3–4 (quoting DN 1 at 10).] Defendants argue, therefore, that "they may only be held liable in the official capacities." [*Id.* at 4.] Defendants misunderstand the distinction between individual and official capacity claims. A plaintiff need not allege that a defendant was acting outside the scope of his employment in order to maintain an individual capacity claim. To the contrary, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, to establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. This is precisely what Plaintiff alleges here. [*See* DN 1 at 10.] Accordingly, the Court will deny Defendants' motion with regard to the individual capacity claims against Voegele, Harris, and Bond.

B. **Claims Against the Oldham County Engineer's Office**

Next, Defendants contend that the Oldham County Engineer's Office is not an entity capable of being sued. [DN 13-1 at 4–5.] Rather, Defendants contend that "the Oldham County Engineer's Office is merely a subunit of Oldham County and cannot be sued as a separate entity." [*Id.* at 4.] The Court agrees.

7

1. **Waiver**

In response, Plaintiff first contends that "Defendants waived any argument about legal existence or capacity by failing to properly raise those issues in their Answer." [DN 14 at 6.] Specifically, Plaintiff relies on Federal Rule of Civil Procedure 9, which addresses "Capacity or Authority to Sue" and "Legal Existence." Fed. R. Civ. P. 9(a). Rule 9(a) states:

> (a) Capacity or Authority to Sue; Legal Existence.
>
> > (1) *In General.* Except when required to show that the court has jurisdiction, a pleading need not allege:
> >
> > > (A) a party's capacity to sue or be sued;
> > >
> > > (B) a party's authority to sue or be sued in a representative capacity; or
> > >
> > > (C) the legal existence of an organized association of persons that is made a party.
> >
> > (2) *Raising Those Issues.* To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

Fed. R. Civ. P. 9(a)(1)–(2). Plaintiff contends that subsection (a)(2) of Rule 9, which provides that a party must raise issues of capacity and legal existence "by specific denial," means that those issues can only be raised in an answer. [DN 14 at 7.]

However, courts and commentators applying Rule 9(a)(2) have not done so as narrowly as Plaintiff suggests. In *Tri-Med Finance Co. v. National Century Financial Enterprises, Inc.*, 208 F.3d 215 (6th Cir. 2000), the Sixth Circuit cited Professors Wright and Miller with approval regarding their explanation of Rule 9(a):

> [A]lthough an objection to a party's capacity is not an affirmative defense, it can be analogized to an affirmative defense and treated as waived if not asserted by motion or responsive pleading .... Early waiver is necessary to give meaning to the requirement in Rule 9(a) that capacity must be put in issue by a "specific negative averment." Moreover, an objection to capacity ... should fall within the

class of "threshold defenses"-issues that must be raised and disposed of at the outset of the suit.

*Tri-Med*, 208 F.3d 215 at * 5 (6th Cir. 2000) (quoting 5 Wright & Miller, *Fed. Prac. & Proc. Civ*. § 1295 at 574 (2d ed. 1990)). This excerpt lends support for a finding that, in the Sixth Circuit, lack of capacity or legal existence may be asserted in "*motion or responsive pleading*," *id.* (emphasis added), rather than strictly in a responsive pleading such as an answer.

In *Tri-Med*, the Sixth Circuit emphasized that Rule 9(a)'s main concern is "early waiver of the right to object to capacity" such that the opposing party has fair and timely notice of the defense. *Tri-Med*, 208 F.3d 215 at * 5 (citing *Wagner Furniture v. Kemner,* 929 F.2d 343, 345 (7th Cir. 1991)). In *Tri-Med*, for instance, the court held that defendant did not object to plaintiff's capacity to sue "until January 1998, over two years after the complaint was filed," which was clearly too late and not in keeping of the spirit of Rule 9(a)'s requirement that the defense be asserted early in the litigation. *Id. Tri-Med* is in stark contrast to this case, however, in which Defendants asserted the defense of lack of legal existence less than a month after the lawsuit was filed, in a motion for judgment on the pleadings filed on the same day as their answer. [*See* DN 12 (Answer); DN 13 (Motion).]

> Additionally, in their most recent treatise, Wright and Miller further state that
>
> [a]n effective denial of capacity, authority, or legal existence . . . may be made in the responsive pleading or, if the lack of capacity, authority, or legal existence issue appears on the face of the pleadings or is discernible there from, the issue can be raised by a motion to dismiss for failure to state a claim for relief. A motion to strike or a motion for judgment on the pleadings may also be employed to raise the issue.

5A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1294 (3d ed.) (citing cases) (emphasis added). This provides further support for a finding that failing to raise the issue of legal existence in an answer does not forfeit the defense, so long as it is raised early in the litigation in a motion to dismiss or a motion for judgment on the pleadings, as it was here.

Courts in the Sixth Circuit and outside of it have likewise acknowledged that the defense of lack of capacity or legal existence may be properly made by answer *or* motion. *See Travis v. Redford Union Sch.*, No. 2:14-CV-10285, 2014 WL 2533165, at *2 (E.D. Mich. June 5, 2014) (citing *Tri-Med*, 208 F.3d 215, at *4–5) ("Like questions pertaining to personal jurisdiction, those involving capacity must be identified in either a responsive pleading or motion, pursuant to Fed. R. Civ. P. 9(a)."); *In re Stone Energy Corp. Sec. Litig.*, No. CIV.A. 05-2088, 2009 WL 3232786, at *2 (W.D. La. Sept. 30, 2009) ("[T]he Court granted defendants' motion for judgment on the pleadings against El Paso, finding that El Paso lacked the capacity to sue or be sued."); *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000) ("Case law in this circuit states that the 'specific negative averment' must be made 'in the responsive pleading or by motion before pleading.'").

In sum, a review of relevant authorities leads the Court to conclude that Defendants did not waive the ability to raise the defense that the Oldham County Engineer's Office lacks the legal existence to be sued by failing to raise it in their answer, when they properly and timely raised it in a motion for judgment on the pleadings. Accordingly, the Court will proceed to address that argument.

**2. Whether the Oldham County Engineer's Office is a Legal Entity Capable of Being Sued**

Plaintiff goes on to argue that, if Defendants did not waive the defense of lack of legal existence, they have nonetheless failed to carry their burden of proving that the Oldham County Engineer's Office (the "Engineer's Office") lacks legal existence. In detail, Plaintiff contends that "Defendants' Motion does not cite any controlling legal authority showing that the Engineer's Office is 'merely a subunit' of the county and cannot be sued as a separate entity." [DN 14 at 10.]

Federal Rule of Civil Procedure 17(b) provides that "[c]apacity to sue or be sued" for parties other than individuals and corporations is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). "Under Kentucky law, 'an unincorporated association cannot be sued solely in its own name.'" *Bleid Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 976 F. Supp. 2d 911, 916 (E.D. Ky. 2013) (quoting *Am. Collectors Exch., Inc. v. Kentucky State Democratic Cent. Exec. Comm.*, 566 S.W.2d 759, 761 (Ky. Ct. App. 1978)). Relying on these principles, courts applying Kentucky law have dismissed various state and local departments, such as police departments, sheriff's departments, detention centers, and police merit boards, on the basis that they are not capable of being sued. *See Tidaback v. City of Georgetown*, No. 5:15-CV-226-JMH, 2017 WL 1398333, at *3 (E.D. Ky. Apr. 14, 2017) ("The Georgetown Police Department is a *department* of the municipal government and is not a proper legal entity to be sued. Rather, the proper defendant is the municipality itself (here, the City of Georgetown)."); *Wilson v. Carroll Cty.*, No. CIV. 12-68-GFVT, 2014 WL 897077, at *6 (E.D. Ky. Mar. 6, 2014) (citations omitted) ("First, the Carroll County Detention Center is not an entity that can be sued because municipal departments such as jails, sheriff's departments, and detention centers 'are not 'persons' subject to suit under [§ 1983].'"); *Fultz v. Whittaker*, 187 F. Supp. 2d 695, 708 (W.D. Ky. 2001) ("Under Kentucky law the Merit Board and the [Oldham County Police Department] are creations of the [Oldham County Fiscal Court] and have no legal existence separate and apart from the [Oldham County Fiscal Court].").

According to Plaintiff, however, Defendants' Motion [ ] relies on the assumption that the Engineer's Office will be treated the same as a police department, without any explanation, analysis, or authority showing that to be true." [DN 14 at 8–9.] Although Plaintiff is correct that Defendants do not offer much in the way of argument as to why the Engineer's Office allegedly

is not an entity capable of being sued, the Court's independent research convinces it that this is the case.

Our sister court's analysis in *Fultz v. Whittaker*, 187 F. Supp. 2d 695, 708 (W.D. Ky. 2001), is especially instructive here, as it also involved governmental departments of Oldham County, Kentucky. There, the plaintiff sued "the Oldham County Police Merit Board ("Merit Board"); Oldham County, Kentucky ("County"); the Oldham County Fiscal Court[10] ("OCFC"); Oldham County Judge Executive John Black; the Oldham County Police Department ("OCPD"); and Oldham County Police Chief Gene Hicks." *Id.* at 707. The *Fultz* court explained that "[i]n Kentucky 'fiscal courts' are local legislative bodies that govern counties." *Id.* at 708 (citing Ky. Rev. Stat. Ann. ("KRS") § 65.410(1); KRS § 67B.020(2)). KRS § 67.083 vests fiscal courts with the power to "enact ordinances, issue regulations, levy taxes, issue bonds, appropriate funds, and employ personnel in performance of [several] public functions," including "Planning, zoning, and subdivision control according to the provisions of KRS Chapter 100" and "Adoption, by reference or in full, of technical codes governing new construction, renovation, or maintenance of structures intended for human occupancy." KRS § 67.083(3); § 67.083(3)(k)–(l).

Importantly, "Oldham County itself can only be sued through the [Oldham County Fiscal Court]," *Fultz,* 187 F. Supp. 2d at 708, which explains why Plaintiff correctly brought this action against the Oldham County Fiscal Court rather than just "Oldham County." However, there is nothing to suggest that the Engineer's Office is a separate entity from the Fiscal Court. Rather, all of the evidence suggests the opposite: that the Engineer's Office is merely a department within the Fiscal Court. For instance, the "Services" tab on the Oldham County Fiscal Court website offers a drop-down list of numerous departments of the Fiscal Court, including, among many others, "Animal Control," "Buildings & Inspections," "County Attorney," "County Clerk,"

"County Engineer," "County Police," "Jail," "Oldham County Stormwater Management District," "Sheriff's Office," and "Voter Information." *See* Oldham County, Kentucky Fiscal Court Website, http://www.oldhamcounty.net (last visited April 4, 2018). The fact that "County Engineer" is merely among a list of several other services performed by the Oldham County Fiscal Court suggests that it is not a separate body.

Clicking on the "County Engineer" link under the services tab brings up a webpage that still prominently features "Oldham County Fiscal Court" at the top, along with an "Oldham County Engineer" heading below. *See* Oldham County, Kentucky Fiscal Court Website, http://www.oldhamcounty.net/oldham-county-engineer (last visited April 4, 2018). This webpage states that "[t]he Oldham County Engineer's Office oversees the construction, inspection, and maintenance of Oldham County infrastructure (roads, bridges, sidewalks, stormwater facilities, etc.) and reviews and inspects development plans and construction sites in order to ensure compliance with Oldham County regulations and accepted engineering standards." *Id.* However, as the Court noted above, Kentucky law vests fiscal courts such as the Oldham County Fiscal Court with employing personnel, such as those in the Engineer's Office, to oversee planning, zoning, subdivision control, and new construction. *See* KRS § 67.083(3); § 67.083(3)(k)–(l). This again suggests that Engineer's Office employees are simply employees of the Oldham County Fiscal Court.

Oldham County Fiscal Court Ordinances that are linked on the Engineer's Office webpage likewise suggest that the Engineer's Office is a mere department within the Oldham County Fiscal Court. For instance, Oldham County Ordinance No. 05-830-326 defines "County" as used therein to "mean a representative or designee of Oldham County government *to include* persons from the County Engineer's office." Additionally, Oldham County Ordinance No. 04-

13

830-217, which addresses, in part, Stop Work Orders, provides that "Oldham County *or its designated representative* may issue a Stop Work Order and require that all activities cease . . ." In this case, the Stop Work Order is on Oldham County Fiscal Court letterhead, but is signed by Defendant Alan Bond, the Oldham County Engineer Technician. [DN 1-7 (Notice of Violation and Stop Work Order).] These Ordinances likewise suggest that the Engineer's Office and its employees are mere "designated representatives" of Oldham County.

Next, the Court can find several cases in which the Oldham County Fiscal Court is named as a defendant, but none in which the Oldham County Engineer's Office is named. *See, e.g.*, *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784 (6th Cir. 2000); *Frederick v. Oldham Cty. Fiscal Court*, No. 3:08-CV-401-H, 2010 WL 3516426, at *2 (W.D. Ky. Sept. 2, 2010).

Finally, while Kentucky Revised Statutes address and authorize "claims against local governments," that term is defined to mean "any city incorporated under the law of this Commonwealth, the offices and agencies thereof, any county government or fiscal court, any special district or special taxing district created or controlled by a local government." KRS § 65.200(3). Nowhere in that definition is reference made to departments of or services performed by fiscal courts.

In *Fultz*, in reliance on the facts that the Oldham Court Fiscal Court is the local legislative body of Oldham County and that suing the Fiscal Court is the proper way to bring suit against Oldham County itself, the court determined that "the Merit Board and the [Oldham County Police Department] are creations of the [Oldham County Fiscal Court] and have no legal existence separate and apart from the [Oldham County Fiscal Court]." *Fultz*, 187 F. Supp. 2d at 708. For the reasons explained above, the Court finds that this same logic applies in this case. Specifically, all of the evidence the Court can find suggests that the Oldham County Engineer's

Office is a mere department of the Oldham County Fiscal Court and is not itself a legal entity capable of being sued. Therefore, the Oldham County Engineer's Office will be dismissed from this suit.

It should be noted, however, that the Court's decision will have no effect on Plaintiff's claims. Insofar as the Court finds that the Oldham County Engineer's Office and the Oldham County Fiscal Court are one in the same, if Plaintiff does prove its claims of alleged wrongdoing by the Engineer's Office, the Fiscal Court will be liable for that wrongdoing. Accordingly, dismissing the Engineer's Office will in no way preclude Plaintiff from recovering if it succeeds on its claims in this case because the Oldham County Fiscal Court remains a party in the action.

## CONCLUSION

For the reasons discussed in detail herein, **IT IS HEREBY ORDERED** as follows:

(1) Defendants' motion for partial judgment on the pleadings. [DN 13], is **GRANTED IN PART AND DENIED IN PART**.

(2) All official-capacity claims against Defendants David Voegele, Scott Harris, and Alan Bond are dismissed, but all individual-capacity claims against those Defendants may proceed.

(3) The Oldham County Engineer's Office is dismissed from this action.

Date:

cc: Counsel